UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHERYLE McGLOTHIN, ) | |
| ) | |
| Plaintiff, ) | Case No. CV11-10600 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits and disabled widow's insurance ("DWI") benefits.[1] The parties have filed a Joint Stipulation setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI and DIW benefits on November 18, 2009, alleging that she had been disabled since January 1, 2004 due to foot problems, pain, and difficulty standing as a result of a broken left foot. [JS 2; Administrative Record ("AR") 33-34, 105]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found

---

[1] The definition of disability is the same for SSI and DWI benefits. See 42 U.S.C. §§ 402(e)(1)(B), 423(d), 1383c(a)(3).

that plaintiff had a severe impairment consisting of a healed left foot fracture with residual pain. [AR 14]. The ALJ concluded that plaintiff retained the residual functional capacity to perform light work, provided she could alternate sitting and standing briefly every hour. [AR 14]. Based on the testimony of a vocational expert, the ALJ found that plaintiff's RFC did not preclude her from performing her past relevant work as a caterer or as a companion. [AR 17]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of her decision. [AR 17].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

## Discussion

**Past relevant work**

Plaintiff contends that the ALJ erred in finding that plaintiff's past jobs as a caterer and as a companion qualify as past relevant work. [JS 4-10].

"Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Substantial gainful activity is work activity that: (1) is done, or usually done, for pay or profit, whether or not a profit is realized; and (2) involves doing significant physical or mental activities, taking into account the nature of the work, how well it is performed, whether it is performed under special conditions,

self-employment, and time spent working. See 20 C.F.R. §§ 404.1572-404.1573, 416.972-416.973.

Earnings are the "primary consideration" in evaluating whether work activity is substantial and gainful. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). Average monthly earnings above a prescribed threshold "ordinarily" will show that a claimant has engaged in substantial gainful activity, while earnings below a prescribed floor "ordinarily" will show that a claimant has not engaged in substantial gainful activity 20 C.F.R. §§ 404.1574(b), 416.974(b); see Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (explaining that earnings are "a presumptive, but not conclusive, sign of whether a job is substantial gainful activity"). Earnings from employment or self-employment count toward average monthly earnings; however, special rules apply to determining "countable" earnings from self-employment and to evaluating whether self-employment is substantial gainful activity. See 20 C.F.R. §§ 404.1575, 416.975.

Plaintiff's social security earnings record shows earnings in only three years during the 15-year period from 1995 through 2010: annual earnings of $529 from self-employment in 2000, annual earnings of $2,260 from employment as an in-home support service provider in 2003, and annual earnings of $2,311 from self-employment.[2] [AR 76, 82-87].

Plaintiff's written disability reports and hearing testimony suggested that she had earnings that were not reflected in her social security earnings record. In August 2008, plaintiff reported working as a "caretaker" from 1990 to 1993 and in 2000, 2003, and 2006. She said that those jobs involved working 25 hours a week (five hours, five days a week) for seven dollars an hour. [AR 106].

During the May 2010 administrative hearing, plaintiff appeared without a representative and testified on her own behalf. She testified that she worked as an in-home support service provider "sporadically" for "six or seven years" between 1990 and 2003. [AR 32]. Plaintiff said that she worked about 16 hours a week (roughly four hours a day, four days a week) and could not recall her hourly rate. [AR 32-33]. Plaintiff also testified that she had operated a catering business out of her home some "six or seven years" before the hearing, before her alleged onset of disability in January 2004. [AR 30-31]. Plaintiff testified that she

---

[2] Plaintiff testified that in 2006, after her alleged onset date, she provided childcare in her home for a short period. [AR 28-29]. The ALJ found that plaintiff's earnings from self-employment in 2006 were below the presumptive level for substantial gainful activity, and therefore that her work activity in 2006 did not constitute substantial gainful activity. [AR 13-14].

1 catered weddings, birthday parties, and other parties. She said that she "prepared everything" and did the
2 supervising and coordinating, but hired help to carry things. [AR 31]. Her largest job had been catering her
3 son's wedding for a thousand people, and her smallest job had been a party for about a hundred people. [AR
4 30-31]. Plaintiff testified that she made "[c]lose to two thousand a month . . . [b]ecause I also sold tamales,
5 I made tamales and sold them so I know I made about five hundred a month off of tamales too." [AR 31].
6 Plaintiff testified that she stopped catering because she broke her foot and developed foot problems. [AR
7 31].

8       In her briefing, plaintiff concedes that if her catering business resulted in average monthly earnings
9 of $2,000 under the Commissioner's in a given year, that would reflect substantial gainful activity. She
10 argues, however, that the ALJ erred in failing to develop the record as to whether the $2,000 per month
11 figure represented plaintiff's gross or net monthly earnings, and whether those earnings were sustained over
12 a sufficient period of time to establish average monthly earnings at the substantial gainful activity level
13 under the Commissioner's rules for averaging earnings. See 20 C.F.R. §§ 404.1574a, 974a. Additionally,
14 plaintiff argues that the Commissioner presumes that the social security earnings record is correct, and that
15 ALJ erred in failing to explore the discrepancies between plaintiff's social security earnings record and her
16 "ambiguous" testimony about her earnings from catering. Plaintiff further contends that her earnings record
17 shows that her caretaker job was not substantial gainful activity.

18       Plaintiff's arguments have merit. The Commissioner's regulations make plaintiff's social security
19 earnings record "conclusive evidence" as to her earnings or lack of earnings from employment or
20 self-employment through the end of 2006. See 20 C.F.R. §§ 404.801-404.803, 404.820-404.822; Chapman
21 v. Apfel, 236 F.3d 480, 482-484, 486 (9th Cir. 2000) (affirming the denial of disability benefits on the
22 ground that the claimant's earnings record was conclusive and showed neither self-employment income nor
23 wages for sufficient quarters of coverage).³ Annual earnings in the amounts "conclusively" established by

---

25     ³ The Social Security Administration's record of a claimant's earnings may be amended if proper application is made within three years, three months, and fifteen days after the end of the year
26 in question. See 42 U.S.C. § 405(c)(1)(B),(c)(3)-(4); 20 C.F.R. §§ 404.801-404.803, 404.820-404.822; Chapman, 236 F.3d at 482. In general, the amount of self-employment earnings shown on
27 a claimant's earnings record is deemed "conclusive" after the statutory time period has expired. However, the Commissioner "may change or delete any entry with respect to wages of self-
28 employment income" after expiration of the statutory time period to conform the agency's records

plaintiff's social security earnings record "will ordinarily show that" a claimant "ha[s] not engaged in substantial gainful activity." 20 C.F.R. §§ 404.1574(b)(3), 416.974(b)(3); see also Social Security Administration website, "Substantial Gainful Activity," http://www.ssa.gov/OACT/COLA/sga.html (last accessed Nov. 7, 2012). Thus, plaintiff's social security earnings record creates a rebuttable presumption that her past relevant work as a caterer and a companion was not substantial gainful activity.

The ALJ found that plaintiff's past work as a caterer and as a companion qualified as "past relevant work" without discussing or rebutting the earnings presumption or making any specific findings as to whether those jobs meet the Commissioner's definition of substantial gainful activity. This was legal error. See Lewis, 236 F.3d at 516-517 (holding that the ALJ failed to rebut the earnings presumption with respect to the claimant's part-time work and therefore erred in finding that plaintiff's past work was substantial gainful activity).

The Commissioner's argument that plaintiff's past work qualifies as substantial gainful activity is unavailing because the ALJ did not address that issue or make appropriate findings. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts"). Because plaintiff was not represented by counsel, moreover, the ALJ had a duty to ensure that the record was fully and fairly developed, and that the claimant's interests were protected. See Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). In the circumstances of this case, the ALJ did not discharge that duty. Accordingly, the Commissioner's decision denying benefits at step four of the sequential evaluation procedure cannot stand.

**Examining source opinion**

Plaintiff contends that the ALJ did not properly evaluate the examining orthopedist's opinion with respect to plaintiff's use of a cane. [JS 10-20].

Harlan Bleecker, M.D. conducted a consultative orthopedic examination on June 3, 2010. [AR 146-157]. Plaintiff told Dr. Bleecker that she fractured her left foot in 2004, and that she had a misstep in December 2009 that injured both feet. She told him that the last three toes on her left foot are numb and do not move well, and that she "uses a cane and a knee brace on the left knee." [AR 146]. Dr. Bleecker

---

to tax returns or portions thereof that were filed within the statutory time period. See 42 U.S.C. § 405(c)(3)-(4); 20 C.F.R. §§ 404.803, 404.820-404.823; Chapman, 236 F.3d at 482-483.

described plaintiff's gait as "bizarre with her left lower extremity externally rotated." [AR 148]. Plaintiff could not walk on her tiptoes or heels, kneel, or squat. [AR 148]. Her lower extremity range of motion, pulses, sensation, reflexes, and motor strength were within normal limits. Plaintiff complained of groin pain with rotation of the hips, and knee pain on flexion. [AR 149].

Dr. Bleecker gave plaintiff no medical diagnosis. In his impression, he wrote:

> It is difficult to come to a valid [medical source statement] on this individual. She has been using a cane since the fracture of her fifth metatarsal some 6 years ago, the reason for which escapes me. She shows no significant atrophy of her left calf. The effect of the recent injury is unknown. She states she was seen three days after the injury at a medical facility and x-rays were taken. She was told she had a calcium deficiency and that is the reason for slow healing.
>
> She has developed a dependency upon the cane due to the injury to her left foot and requires that for short and long distances. This appears to be medically necessary because she had developed this dependency on it since the injury in 2004.

[AR 150].

Dr. Bleecker opined that plaintiff was not limited in her upper extremities, could perform the lifting and carrying requirements of light work, and could sit, stand or walk for up to one hour at a time each for a total of six to eight hours in an eight-hour day. He opined that she could walk 20 feet without using a cane, and could climb a few stairs using a cane. He said that he could not assess her ability to stoop, kneel, crouch, or crawl. [AR 150, 151-156].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ agreed with Dr. Bleecker that plaintiff could perform a range of light work but rejected Dr. Bleecker's opinion that plaintiff had needed a cane to ambulate since she broke her foot in 2004. The ALJ

cited the absence of a diagnosis or significant objective findings in Dr. Bleecker's report, the lack of any treating source evidence corroborating use for, or need of, a cane since 2004, and Dr. Bleecker's observation that the reason for plaintiff's use of a cane "escapes me." [AR 16]. The ALJ also observed that plaintiff did not have cane during the hearing. [AR 16].

The ALJ's reasons for rejecting Dr. Bleecker's opinion regarding medical necessity for a cane were clear and convincing with respect to the period before April 2010. Dr. Bleecker himself indicated that his orthopedic examination findings did not explain plaintiff's asserted history of several years of dependence on a cane. His failure to provide either a diagnosis or objective findings supporting his finding of medical necessity for a cane is a specific, convincing reason for rejecting that aspect of his opinion. See Ukolov v. Barnhart, 420 F.3d 1002, 1004-1006 (9th Cir. 2005) (holding that treating source opinions that contained no diagnoses and relied exclusively on examination findings that could be manipulated by the patient, such as abnormal gait and difficulty balancing, were insufficient to establish a severe or disabling impairment); see also Social Security Ruling 96-9p, 1996 WL at 374185, at *7 (stating that medical documentation is required to establish that use of an assistive device is medically required).

To the extent that Dr. Bleecker based his opinion on plaintiff's subjective history of using a cane, the ALJ's rejection of that aspect of his opinion was proper. The ALJ found that plaintiff's subjective allegations, including her allegations of needing a cane, were not fully credible in light of her lack of significant treatment for foot problems since 2006, inconsistencies between her statements and the medical records, and a lack of medical evidence corroborating the alleged severity of her subjective complaints. Dr. Bleecker did not review any of plaintiff's medical records and did not have access to the evidence bearing in plaintiff's credibility that considered by the ALJ. Moreover, plaintiff does not challenge the ALJ's adverse credibility determination. The ALJ was entitled to reject Dr. Bleecker's opinion to the extent that it was based on plaintiff's permissibly discounted subjective complaints. [See AR 16]. See Morgan, 169 F.3d at 602 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotation marks omitted).

Plaintiff contends that the ALJ did not properly consider an April 2010 treatment report regarding her need for a cane. Plaintiff does not point to any treating source evidence in the record corroborating

plaintiff's use of or need for a cane prior to that date. On April 12, 2010, however, plaintiff went to a Los Angeles County orthopedic clinic requesting physical therapy for hip and pelvic pain, which she attributed to her December 2009 injury on the escalator. She was evaluated by a physician's assistant, whose impression was osteoporosis and early stage degenerative joint disease. The physician's assistant referred plaintiff for physical therapy, ordered a cane, and instructed plaintiff to follow up in four to five months. [AR 175-178].

The ALJ did not specifically mention, or give reasons for rejecting, the physician assistant's April 2010 report. Defendant argues that a physician's assistant is not an "acceptable medical source," and therefore that the ALJ did not err in failing to discuss that evidence.

The Commissioner's regulations state that "we may also use information from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ may give less weight to information from "other sources" than to information from "acceptable medical sources." Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.), cert. denied, 519 U.S. 881 (1996). Contrary to plaintiff's contention, a physician's assistant is not an "acceptable medical source" where, as here, there is no evidence on the face of the report or otherwise that she is working in conjunction with a physician in rendering the particular treatment or opinion at issue. See Gomez, 74 F.3d at 970-971.

The ALJ's failure to provide reasons for rejecting the physician's assistant's April 2010 report is not legal error.

///

///

///

**Conclusion**

8

1    The Commissioner's decision is not supported by substantial evidence and contains legal error. A remand for further proceedings is the appropriate remedy because it is not clear that the ALJ would be required to award benefits if her errors were corrected. See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2000) (holding that when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)); Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). Accordingly, the Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings and a new decision consistent with this memorandum of decision.

**IT IS SO ORDERED.**

November 14, 2012

_____
ANDREW J. WISTRICH
United States Magistrate Judge